O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA THERESA WORTH,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendants. | Case No.  2:17-cv-04400-KES<br><br>MEMORANDUM OPINION AND<br>ORDER |

**I.**

**BACKGROUND**

On June 26, 2013, Maria Theresa Worth ("Plaintiff") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging an inability to work due to anxiety, depression, a skin disorder, and osteoporosis since July 20, 2008, after her fiancé's suicide.  Administrative Record ("AR") 177-84, 191, 296.  Prior to that, she had worked as a typist through a temporary employment agency and also did bookkeeping and property management.  AR 68-71.

On December 2, 2014, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified.

AR 60-92.  At the hearing, Plaintiff testified that she cried all the time, and she cried at the hearing.  AR 76-79.  The ALJ continued the hearing for consultative examinations, and on July 17, 2015, a second hearing was held, again with testimony from Plaintiff and a vocational expert ("VE").  AR 36-59.  By the date of the second hearing, Plaintiff was homeless.  AR 38.

On August 14, 2015, the ALJ issued a decision denying Plaintiff's applications.  AR 18-31.  The ALJ found that Plaintiff does not suffer from any severe mental impairments, but suffers from the severe physical impairments of osteoarthritis, degenerative disc disease, polyneuropathy, and migraine headaches.  AR 24.  Despite these impairments, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday, with no climbing ladders, ropes, or scaffolds; no exposure to hazards; no walking on uneven surfaces; and no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs.  AR 27.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could perform her past jobs as a bookkeeper or apartment house manager.  AR 30.  As a result, the ALJ concluded that Plaintiff was not disabled.  AR 31.

## II.

## PROCEDURES AND LEGAL STANDARDS

### A. The Evaluation of Disability.

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was

1  disabled within the relevant time period.  Johnson v. Shalala, 60 F.3d 1428, 1432
2  (9th Cir. 1995).

3  **B.  The Five-Step Evaluation Process.**

4      The ALJ follows a five-step sequential evaluation process in assessing
5  whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester
6  v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996).  In the first step, the Commissioner
7  must determine whether the claimant is currently engaged in substantial gainful
8  activity; if so, the claimant is not disabled and the claim must be denied.  20 C.F.R.
9  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

10      If the claimant is not engaged in substantial gainful activity, the second step
11  requires the Commissioner to determine whether the claimant has a "severe"
12  impairment or combination of impairments significantly limiting his ability to do
13  basic work activities; if not, the claimant is not disabled and the claim must be
14  denied.  Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

15      If the claimant has a "severe" impairment or combination of impairments, the
16  third step requires the Commissioner to determine whether the impairment or
17  combination of impairments meets or equals an impairment in the Listing of
18  Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if
19  so, disability is conclusively presumed and benefits are awarded.  Id.
20  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

21      If the claimant's impairment or combination of impairments does not meet or
22  equal an impairment in the Listing, the fourth step requires the Commissioner to
23  determine whether the claimant has sufficient residual functional capacity to
24  perform his past work; if so, the claimant is not disabled and the claim must be
25  denied.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden
26  of proving he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If
27  the claimant meets that burden, a prima facie case of disability is established.  Id.
28      If that happens or if the claimant has no past relevant work, the

Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  Id. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**C. Standard of Review.**

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla, but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination."  Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

**III.**

**ISSUE PRESENTED**

Plaintiff's appeal presents the sole issue of whether the ALJ erred at step two of the sequential evaluation process by finding that Plaintiff's medically determinable mental impairments of anxiety and depression were not "severe." (Dkt. 19, Joint Stipulation ["JS"] at 4.)  Plaintiff contends that the ALJ failed to state specific and legitimate reasons for giving more weight to the opinion of consultative psychiatric examiner Dr. Elmo Lee than that of Plaintiff's treating psychiatrist, Dr. Eun Joo Justice.  (Id. at 4-12.)

**IV.**

**DISCUSSION**

**A. Rules Governing Step Two of the Sequential Evaluation Process.**

**1.      Severity Defined.**

A determination that an individual's impairment(s) (or combination thereof) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) and an informed judgment about the limitations and restrictions it imposes on the individual's mental ability to do basic work activities.  Social Security Ruling ("SSR") 85-28, 1985 SSR LEXIS, governs the evaluation of whether an alleged impairment is severe:

> An impairment or combination of impairments is found "not
> severe" … when medical evidence establishes only a slight
> abnormality or a combination of slight abnormalities which would
> have no more than a minimal effect on an individual's ability to work
> … i.e., the person's impairment(s) has no more than a minimal effect
> on his or her physical or mental ability(ies) to perform basic work
> activities. …
>
> If such a finding [of non-severity] is not clearly established by
> medical evidence, however, adjudication must continue through the

sequential evaluation process.

* * *

Great care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued.

SSR 85-28, 1985 SSR LEXIS 19 at *7-12.  With regard to mental functioning, "basic work activities" include use of judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.  See, e.g., 20 C.F.R. § 404.1521(b)(3-6).[1]

The claimant's burden at Step Two is relatively light.  The Ninth Circuit has held that "the step two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Id. (citing SSR 85-28, 1985 SSR LEXIS 19; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28)).

**2.      Evaluating the Severity of Mental Impairments.**

When an applicant for DIB or SSI claims mental impairment, the ALJ must employ the "special technique" described in 20 C.F.R. §§ 404.1520a and 416.920a.  Keyser v. Comm'r of SSA, 648 F.3d 721, 725 (9th Cir. 2011).  Specifically, the

---

[1] The Court cites to regulations in effect at the time of the ALJ's decision.  See Patino v. Berryhill, No. 16-02970, 2017 WL 3184468, at *1, n.3 (C.D. Cal. July 26, 2017) ("Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision.").

ALJ must determine whether an applicant has a medically determinable mental impairment, id. §§ 404.1520a(b), 416.920a(b), rate the degree of functional limitation for four functional areas, id. §§ 404.1520a(c), 416.920a(c), determine the severity of the mental impairment (in part based on the degree of functional limitation), id. §§ 404.1520a(d), 416.920a(d) and then, if the impairment is severe, proceed to step three of the disability analysis. Keyser, 648 F.3d at 725. As of the date of the ALJ's opinion, the four functional areas the ALJ had to assess were: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Limitations in the first three functional area are assessed on a five-level scale: (1) none, (2) mild, (3) moderate, (4) marked, or (5) extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Limitations in the fourth functional area are assessed on a four-point scale: none, one or two, three, and four or more. Id.

The regulations do not explain the difference between "mild," "moderate," "marked," and "extreme." While there are no bright lines between the rating levels,[2] the distinctions are critical. If the degree of limitation in the three functional areas is rated as "none" or "mild" and the claimant has not experienced any episodes of decompensation, it will generally be concluded that the impairment is not severe unless the evidence otherwise indicates that there is more than a

---

[2] For example, district courts have interpreted lack of medical treatment for mental impairments in different ways. Compare Frias v. Colvin, No. 15-02185, 2015 U.S. Dist. LEXIS 165768, at *14 (C.D. Cal. Dec. 10, 2015) (upholding ALJ's determination that depression not severe where claimant provided no evidence of mental health treatment) and Garcia v. Colvin, No. 13-7110, 2014 U.S. Dist. LEXIS 100699, at *17 (C.D. Cal. July 22, 2014) (reversing ALJ's determination that depression not severe where ALJ gave unsupported reasons for discounting opinion of examining doctor and overly relied on claimant's lack of mental health treatment, because it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" (citation omitted)).

minimal limitation in the ability to do basic work activities.  20 C.F.R.
§§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ may consider objective medical evidence, such as what medications a claimant uses to alleviate symptoms, in evaluating severity and limiting effects of an impairment.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Thus, a claimant whose depressive symptoms are minimized by taking antidepressant medication may not suffer from "severe" depression.  See Beck v. Astrue, 303 F. App'x 455, 457 (9th Cir. 2008) (holding that substantial evidence supported ALJ's finding that plaintiff's depression with anxiety were not severe impairments because conditions could be "controlled effectively" with treatment and medical records did "not indicate any severe problems"); Fields v. Astrue, No. 07-1442, 2008 U.S. Dist. LEXIS 79828, 2008 WL 4384248, at *7 (C.D. Cal. Sept. 3, 2008) (holding that substantial evidence supported ALJ's finding that plaintiff's depression was "not severe and adequately controlled with mild anti-depressive medication with no more than mild functional limitations" because record showed that plaintiff "responds well to medications" and no evidence of longitudinal history of psychiatric impairment, hospitalization, or prolonged outpatient treatment).

### 3.    Evaluating Conflicting Medical Evidence.

At the second step of sequential evaluation, the ALJ examines the medical evidence to determine whether an impairment is "not severe"—i.e., whether the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.  SSR 85-28, 1985 SSR LEXIS 19.  The weight given to medical opinions depends in part on whether they are proffered by a medical source who (1) directly treated the plaintiff, (2) who examined but did not treat the plaintiff, or (3) who did not treat or examine the plaintiff, but reviewed the plaintiff's medical records.  See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester, 81 F.3d at 830.

A treating physician's opinion is generally entitled to more weight than that

of an examining physician, which is generally entitled to more weight than that of a non-examining physician.  <u>Lester</u>, 81 F.3d at 830.  Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (citing <u>Reddick</u>, 157 F.3d at 725); <u>Lester</u>, 81 F.3d at 830-31 (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)).

Despite these general rules, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician.  <u>Orn</u>, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

**B.  <u>Summary of the Medical Evidence of Plaintiff's Mental Impairments.</u>**

Plaintiff provided records from her primary care physician, Dr. Hernandez, her treating psychiatrist, Dr. Justice, and other mental health professionals (such as psychologists, therapists, and social workers) associated with Dr. Justice's practice at the South Bay Mental Health Center ("SBMHC"), part of the Los Angeles County Department of Mental Health.

**1.  Dr. Hernandez.**

The treating records from Dr. Hernandez span from 2007-2015.  AR 322-52, 384-409.  These records focus on Plaintiff's physical ailments, noting by 2011 that she was seeing other doctors for psychiatric care.  AR 340.  Nevertheless, Dr. Hernandez recorded observations of Plaintiff's visible anxiety and crying (<u>e.g.</u>, AR 293-95, 441).  As diagnoses, Dr. Hernandez consistently listed anxiety and

depression.  See, e.g., AR 313, 323, 326.  These records reflect that at times, Plaintiff was taking no mental health medication (AR 324), but at other times, she was prescribed Xanax/alprazolam (AR 342), Zoloft/sertraline (AR 316), Remeron/mirtazapine (AR 311, 355), and Ativan/lorazepam (AR 293).

## 2. Dr. Justice and SBMHC.

In July 2011, SBHMC diagnosed Plaintiff as suffering from a mood disorder and anxiety.  AR 321.  The staff administered a mental status exam that revealed excessive speech and worried affect, but no other abnormalities.  AR 320; see also AR 443 (in 2015, Plaintiff observed talking in "nonstop fashion").  Plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 50.[3]  AR 321.

Plaintiff's 2011 care plan included meeting with licensed social worker Lynn Barnard and a therapist, psychologist Marlon Young.  AR 301, 507.  Dr. Young set a treatment goal of reducing panic attacks from "3x/day to 10x/wk" and reducing excessive crying from "2-3x/day to 10x/wk."  AR 507.

In January 2014, Ms. Barnard opined that Plaintiff could not be gainfully employed until an estimated date of January 1, 2015.  AR 355.  At that time, Plaintiff was diagnosed with generalized anxiety disorder and taking the anti-depressant Remeron.  Id.

In December 2014, Dr. Justice completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form ("MSS Form").  AR 356-59.

---

[3] A GAF score of 50 "denotes serious symptoms or a serious impairment in functioning."  Preston v. Astrue, No. EDCV 11-01914, 2012 U.S. Dist. LEXIS 157143, at *18 (C.D. Cal. Oct. 31, 2012).  A GAF score between 51 and 60 means the claimant has "moderate symptoms."  Schmidt v. Colvin, No. 2:12-cv-00016-KJN, 2013 U.S. Dist. LEXIS 137861, at *42 (E.D. Cal. Sep. 25, 2013).  A GAF score between 61 and 70 means the claimant has some mild symptoms, but generally functioning pretty well.  A GAF score between 71 and 80 means the claimant has no more than slight impairment.  Provenzano v. Astrue, No. ED CV 09-1256-CT, 2009 U.S. Dist. LEXIS 118151, at *39-40 n.4 (C.D. Cal. Dec. 17, 2009).

Dr. Justice opined that Plaintiff had "moderate" or "marked" limitations in all the functional areas listed.  Id.  The form defined "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily," and "marked" as "serious limitation in this area" with "substantial loss in the ability to effectively function."  Id.  To support opinions concerning Plaintiff's limitations understanding and carrying out instructions, Dr. Justice stated, "Is easily overwhelmed by stressors and chronic anxiety symptoms.  Unable to maintain psychotherapy session participation due to preoccupation with life stressors and disorganization."  AR 356.  To support opinions about Plaintiff's social functioning, Dr. Justice cited, "verbally aggressive behavior directed at staff."  AR 357; see also AR 429 (11/25/14 SBMHC progress notice stating, "client walked in with appointment requesting assistance, clerical staff at front desk described her as 'demanding to be seen,' but was subsequently appropriate …").  Dr. Justice also noted that Plaintiff reported difficulty making decisions, frequent tardiness, and confusion using the bus system, reports Dr. Justice considered "consistent" with "observations of her functioning when at appointments."  AR 357.

In March 2015, Plaintiff's therapist called her generalized anxiety disorder and major depressive disorder "moderate."  AR 443.  By June 2015, Dr. Justice's treatment plan for Plaintiff included "to decrease anxiety from 50% a day to 10% a day."  AR 410.  At various times in 2014 and 2015, Plaintiff reported to SBMHC that she was homeless.  AR 429, 433.

### 3. Dr. Lee.

Dr. Lee evaluated Plaintiff once in January 2015.  AR 370-74.  He noted that Plaintiff had been receiving mental health treatments at SBMHC since 2011 and was currently taking Ativan and pain medication.  AR 371.  She told him that she had been homeless in the past, but was then living with a friend.  Id.  He observed that her affect was "mildly anxious" and she became "briefly tearful" during the evaluation.  AR 372.  Nevertheless, she was "focused throughout the interview."

Id. She performed well on basic tests of memory and cognition, and Dr. Lee assigned her a GAF score of 65. AR 372-73. Based on her reporting that she can perform personal care, domestic chores, driving, and shopping, Dr. Lee found that Plaintiff "is able to perform her own ADLs [activities of daily living]." AR 371. He rated her thought content as free of delusions, hallucinations, and suicidal ideation, but noted that Plaintiff had "various somatic concerns" and "describe[d] her exquisite pains in vivid detail." AR 372.

Dr. Lee summed up Plaintiff's "psychiatric symptoms" as "relatively mild to moderate," noting that her condition "may improve within the next 12 months" because she was receiving "regular mental health services" and "psychotropic medications." AR 373. He opined that if she continued with her "current mental health treatment or prescribed psychotropic medication," then she could interact with others, perform work activities on a consistent basis, maintain regular attendance, and "deal with the usual stress encountered in the workplace." AR 373-74. He did not identify any areas of mental functioning in which Plaintiff had limitations of any degree. Id. The report does not state how much time Dr. Lee spent with Plaintiff.

## C. **The ALJ's Treatment of the Medical Evidence.**

The ALJ gave Dr. Lee's opinion "significant probative weight" because it was supported by the objective medical evidence, and Dr. Lee "had the opportunity to review and consider the relevant documentary evidence …." AR 25.

As examples of supporting objective medical evidence, the ALJ cited (1) SBMHC's July 2011 mental status exam which found some abnormalities with speech and affect, but no thought content or process disturbances (AR 25, citing AR 320), (2) subsequent records from May 2012 and July 2012 that revealed "normal speech, average intellect and memory, fair insight, and a good attitude" (id., citing AR 310-11), and (3) a March 2014 treatment note characterizing Plaintiff's as "stable" (id., citing AR 295). The ALJ summarized Plaintiff's treating

12

records as reflecting that she continually complained about anxious and depressive symptoms, but her treating medical sources observed "mostly normal cognitive, expressive, receptive, and social functioning." AR 25.

The ALJ gave Dr. Justice's MSS Form "little probative weight." AR 26. As reasons for discounting Dr. Justice's MSS Form opinions, the ALJ cited (1) lack of supporting objective evidence, (2) inconsistency with Dr. Lee's opinion, and (3) Dr. Justice "appears [to have] relied quite heavily on the subjective report of symptoms and limitations provided by claimant" despite "good reasons for questioning [their] reliability." Id.

Relying on Dr. Lee, the ALJ found that Plaintiff's mental impairments caused no more than "mild" limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and that Plaintiff had not experienced any episodes of decompensation. AR 26. The ALJ concluded the Plaintiff's depression and anxiety were not "severe." Id.

**D.** **Analysis of the ALJ's Reasons for Discounting Dr. Justice's MSS Form in Favor of Dr. Lee's Opinion.**

### 1. Inconsistency with Dr. Lee.

The fact that Dr. Justice and Dr. Lee rendered inconsistent opinions is not, by itself, a sufficient reason to give Dr. Lee's opinion more weight than Dr. Justice's. It does mean, however, that the ALJ could discredit Dr. Justice's opinion for "specific and legitimate" reasons, rather than "clear and convincing" ones. See Lester, 81 F.3d at 830-31.

### 2. Dr. Lee's Opportunity to Review Plaintiff's Medical Records.

Contrary to the ALJ's claim that Dr. Lee "had the opportunity to review and consider the relevant documentary evidence …" (AR 25), Dr. Lee's report says, "There were no records for review." AR 370. Elsewhere, Dr. Lee's report describes Plaintiff's past medical history as "per the medical records" and Axis III diagnosis as "per the medical records," but it is unclear whether this is referring to

13

medical records that Dr. Lee actually reviewed. AR 373-72. Dr. Lee did not know exactly what care Plaintiff was receiving for her depression and anxiety, indicating that she was receiving "regular mental health services through a local mental health provider **or** is receiving psychotropic medications through a primary physician." AR 373, emphasis added. In contrast, Dr. Justice had access to all of Plaintiff's records from SBMHC from 2011 through 2015. Thus, the ALJ's second reason for giving greater weight to Dr. Lee's opinions is not a legitimate reason supported by substantial evidence.

### 3. Lack of Supporting Objective Evidence.

The ALJ found that Dr. Lee's opinion was supported by the weight of the objective medical evidence, whereas Dr. Justice's was not. The evidence cited by the ALJ, however, does not support Dr. Lee's finding that Plaintiff has no functional limitations attributable to depression or anxiety. For example, SBMHC's initial 2011 mental status exam noted "restless" motor activity, "excessive" speech, and "anxious" and "worried" mood and affect. AR 320. Such mannerisms could more than minimally affect Plaintiff's ability to perform basic work activities, such that the exam cannot be cited as supporting Dr. Lee's opinion of no functional limitations.

The record at AR 311 is a Brief Follow-Up Medication Support Service form ("Medication Form") completed by Dr. Josephina Quano at SBMHC in May 2012. Dr. Quano assessed eleven mental status items. She found Plaintiff's mood and affect "labile."[4] AR 311. She found Plaintiff's intellect and memory "average," her insight "fair," and her attitude "good." Id. Her notation by "speech" is hard to read, but it appears to say "RPID," possibly an abbreviation for "rapid." Id. Dr. Quano identified Plaintiff's "target symptoms" as "anxiety" and noted, "[illegible]

---

[4] Merriam-Webster.com defines "labile" as "readily or continually undergoing chemical, physical, or biological change or breakdown: unstable."

not good; trying to cope." Id.

The record at AR 310 is another Medication Form completed by Dr. Quano two months later. The form lists eleven items under "mental status" (including thought, intellect, memory, mood, and attitude); Dr. Quano indicated that all were "WNL [within normal limits]." AR 310. She also noted that Plaintiff was taking Remeron and had a "reaction to medication – tried different dosages." Id. The recommended treatment is "continue therapy; needs grief therapy." Id.

The record at AR 295 is a Medication Form completed by Dr. Danilo Ching of SBMHC in March 2014. His handwritten notes are hard to read, but appear to say, "Stable although needs coping skill & support. [Dr.] Davidson's pt [patient] at this time; needs a CM [case manager] here in South Bay; needs BCT [behavioral cognitive therapy]; needs counselling." AR 295. He noted that she was taking Ativan and "medication helping …." Id. Under "mental status," he made notations including "disturb speech" and possibly "sad affect." Id.

These records recommending additional therapy and counselling and noting visible grief and disturbed speech even after taking psychotropic medication show that Plaintiff's mental impairments caused visible symptoms over the course of several years, and such visible symptoms could affect her ability to perform basic work activities, such as speaking and interacting appropriately with others. These records do not support Dr. Lee's opinion that Plaintiff's mental impairments did not cause her even mild functional limitations.

In contrast, many of Dr. Justice's opinions in the MSS Form were supported by objective evidence. He cited his own observations of Plaintiff's affect, disorganization, and confusion made during their long treating relationship. AR 356-56. He cited observations of her speaking to staff inappropriately, which is corroborated by other SBMHC records. AR 357, 429. Other physicians and the ALJ had observed Plaintiff as tearful. AR 76-79, 293, 372. His opinions are consistent with Plaintiff's initial assessment GAF score of 50. AR 321.

15

Dr. Lee's report, on the other hand, is not even internally inconsistent. He called her symptoms "mild to moderate," but he assigned a GAF score of 65, the mid-range for only mild symptoms. AR 373. Dr. Lee referenced medical records that he apparently never reviewed. AR 370-71, 373. He qualified his opinions about Plaintiff's lack of functional limitations on the condition that she continue receiving mental health care treatment, but he did not know the content of that treatment other than from Plaintiff's own reports. AR 374. In 2015, he opined that he expected her condition to improve in the next twelve months if she pursued the same course of treatment (AR 373), without explaining (1) what improvements he expected (since he opined she had no functional limitations), or (2) why improvement would suddenly occur in 2015 if it had not occurred in 2011-2014.

In the big picture, the objective evidence shows that Plaintiff could do skilled work before 2008, but she did not have substantial gainful employment after that date, to the point of becoming homeless. AR 23, 429, 433. She sought treatment for her mental health in 2011 and continued that treatment through 2015. AR 340, 410. None of her treating sources ever called her symptom-free or opined that she was meeting her treatment goals. Her mental health treatment included taking multiple psychotropic medications (AR 293, 311, 316, 324, 342, 355), but her symptoms persisted such that even in 2014 and 2015, she was still displaying disturbed speech and tearfulness (AR 295, 372, 443), and Dr. Justice set a treatment goal of reducing her anxiety (AR 410). Thus, the Court concludes that the ALJ's third reason for giving Dr. Justice's opinion less weight than Dr. Lee's is not a legitimate reason supported by substantial evidence.

### 4. Over-Reliance on Plaintiff's Subjective Reports.

Over-reliance on a claimant's subjective self-assessment can provide a specific and legitimate reason to discredit a treating doctor's opinion. See, e.g., Turner v. Comm'r of SSA., 613 F.3d 1217, 1223 (9th Cir. 2010) (finding that "the ALJ reasonably rejected" the opinion of a physician where the physician's "opinion

was based almost entirely on the claimant's self-reporting"); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a … physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (citation omitted)).

That said, the Ninth Circuit has pointed out that assessing the severity of mental conditions such as anxiety and depression necessarily requires some reliance on the patient's self-reporting, as follows:

> mental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) …. To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's "subjective allegations" is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders.

<u>Ferrando v. Comm'r of SSA</u>, 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011); <u>see also</u> <u>Ryan v. Comm'r of SSA</u>, 528 F.3d 1194, 1199 (9th Cir. 2008) (noting that, "unsurprisingly," the doctor recorded the symptoms relayed to him by the claimant, but he also "recorded several of his own clinical observations of [the claimant]" — e.g., odd behavior and mannerisms, rapid speech, quick agitation, anger); <u>Leach v. Colvin</u>, No. 13-00426, 2014 U.S. Dist. LEXIS 52126, at *22-23, 25 (D. Or. Apr. 15, 2014) (noting that even where mental status examinations were based in part on self-reporting by claimant, that was "not, in itself, a sufficient basis to reject Dr. Turner's opinion").

Here, the ALJ was tasked with weighing the conflicting opinions of Dr. Justice and Dr. Lee. Dr. Lee necessarily relied on Plaintiff's self-reporting to complete the first two pages of his report (e.g., chief complaint, history of present illness, current medication, social history, and activities of daily living) because he apparently did not have any of Plaintiff's medical records. AR 370-71. He could

rely on his own observations of her behavior and affect during the examination, but he only met with her once for an unspecified amount of time.  AR 370, 372.  He administered some tests that yielded objective results (such as being able to name the President, spell "world" forwards and backwards, remember three objects after three minutes, and state the similarity between an apple and an orange).  AR 373.  From Plaintiff's ability to do such basic tasks, Dr. Lee concluded that her mental impairments did not cause any functional limitations, but only if she continued her "current mental health treatment or the prescribed psychotropic medications," indicating that Dr. Lee did not know the extent of her treatment.   AR 373-74.

In comparison, Dr. Justice also relied somewhat on Plaintiff's subjective complaints, but not exclusively.  As discussed above, his MSS Form references objective observations Dr. Justice acquired over years of treating Plaintiff, such as her tendency to become confused and her inappropriate verbal interactions with staff.  AR 357.  Given that both doctors relied somewhat on Plaintiff's subjective complaints but also relied on their own observations, and given Dr. Justice's far longer treating relationship with Plaintiff, over-reliance on Plaintiff's subjective complaints is not a legitimate reason to give Dr. Lee's opinion more weight than Dr. Justice's.

### 5.  Harmless Error Analysis.

The Court concludes that the ALJ did not give sufficient specific and legitimate reasons for giving Dr. Justice's opinion less weight than Dr. Lee's.[5]  Even when the ALJ commits legal error, the Court must uphold the decision where that error is harmless.  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).  An ALJ's failure to properly consider an impairment at step two may be harmless

---

[5] The Court does not conclude that Dr. Justice's opinion is entitled to any particular weight.  The Court simply concludes that the ALJ did not give specific and legitimate reasons for discounting it compared to Dr. Lee's.

18

where the ALJ considered the functional limitations caused by that impairment later in the decision.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Here, the ALJ ultimately did not fully accept the opinions of Dr. Lee (i.e., no functional limitations) or Dr. Justice (i.e., moderate and marked limitations), and instead took a middle approach by finding that Plaintiff's limitations were "no more than mild" in the three functional areas relevant at step two.  AR 26.  The ALJ failed to mention Plaintiff's mild mental impairments beyond step two, however, "leaving no means for the Court to determine whether the ALJ considered the effects of these impairments at the later steps."  Acosta-Espinosa v. Berryhill, No. 16-5831, 2017 WL 5664656, at *4 (W.D. Wash. Nov. 27, 2017) (remanding after finding error at step two to be not harmless).  The Court therefore cannot conclude that the ALJ's error was harmless.

Nor can the Court conclude, on the basis of the record before it, that substantial evidence supports the ALJ's "no more than mild" limitations finding.  For example, the ALJ did not sufficiently develop Plaintiff's testimony that she attended cosmetology school on a fulltime basis from September 2012 through June 2013.[6]  See Tommasetti, 533 F.3d at 1039 (noting that ALJ can consider inconsistency with daily activities when considering evidence regarding the degree of impairment caused by mental health conditions); see also Tolman v. Colvin, No. 14-663 FFM, 2015 U.S. Dist. LEXIS 163867, at *15 (C.D. Cal. Dec. 7, 2015) (upholding ALJ's determination that depression was not severe where claimant "was consistently employed during his 15- to 20-year history of depression").

Plaintiff testified that she attended "beauty school" for forty hours/week with

_____

[6] Plaintiff's therapy notes also discuss other activities that suggest Plaintiff's mental impairments do not affect her functioning more than minimally, such as helping a friend move (AR 495), attending art classes (AR 478), planning a 10-day trip to El Salvador with her church (AR 485), and planning a trip to Missouri to visit a friend (AR 437).  The ALJ did not discuss these activities.

"perfect" attendance and "almost finished," but she was "dropped" from the program due to a skin condition that caused her to develop open wounds. AR 52-55; see also AR 503 (Plaintiff attended WIA [Workforce Investment Act] program orientation in 2011 and "was to attend cosmetology training," but needed to follow up); AR 500 (in June 2012, Plaintiff was approved "to begin a year-long program, M-F, 8-5" at cosmetology school); AR 498 (telling therapist in June 2012 she was "discouraged by issues with cosmetology school funding via WIA program"); AR 470 (telling therapist in February 2014 about skin disorder "from nail care chemicals"); AR 332-34 (in early 2014, Dr. Hernandez diagnosed Plaintiff as suffering from eczema, scabies, and "lesions on skin"). She testified that she received a 3.4 average in her coursework. AR 54. After her skin condition cleared up, she tried to go back, but she was told "no" without any explanation. AR 55.

The ALJ asked Plaintiff why she could not work fulltime if she could attend beauty school fulltime. AR 56. Plaintiff responded by explaining that she was placed at the school through a county program that paid the school $8,000, whereas the school only received $3,000 from regular students. AR 56. Plaintiff's answer suggests that the school was willing to overlook functional shortcomings of students referred through the county program because their enrollment was profitable. Plaintiff also said, "It's not like working – you sit there and do nothing for six hours, well I go to school for four. The other four you just sit there." AR 57.

It remains unclear what school Plaintiff attended, what tasks were required of her, how well she performed them, and why she was unable to return and obtain a cosmetology license if she was close to completing the program successfully.[7] The Court therefore cannot conclude that the ALJ's improper rejection of Dr. Justice's opinion was inconsequential to the ultimate nondisability determination, because

---

[7] The school is identified only as being "on Venice and Vermont." AR 491.

the Court cannot determine whether substantial evidence supports the ALJ's finding
of "mild" functional limitations caused by Plaintiff's mental impairments.

**E.  Remand.**

In general, the Court has "discretion to remand for further proceedings or to
award benefits."  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).  Where an
ALJ improperly rejects a medical opinion, the district court may grant a direct
award of benefits when certain conditions are met.  The three-part analysis for such
conditions is known as the "credit-as-true" rule.  Garrison v. Colvin, 759 F.3d 995,
1019 (9th Cir. 2014).  First, the court asks whether the "ALJ failed to provide
legally sufficient reasons for rejecting evidence, whether claimant testimony or
medical opinion."  Id. at 1020.  Second, the court determines whether there are
outstanding issues that must be resolved before a disability determination can be
made and whether further administrative proceedings would be useful.  Treichler v.
Comm'r of SSA, 775 F.3d 1090, 1101 (9th Cir. 2014).  When these first two
conditions are satisfied, the district court then credits the discredited testimony as
true for the purpose of determining whether, on the record taken as a whole, there is
no doubt as to disability.  Id.

As explained above, the Court has determined that the ALJ failed to provide
legally sufficient reasons for giving Dr. Justice's opinion less weight than Dr.
Lee's.  The Court concludes, however, that there are outstanding issues to be
resolved before a disability determination can be made, and that further
administrative proceedings would be useful.  On remand, the ALJ should develop
the record as to whether Plaintiff's participating in the beauty-school program truly
required her to perform basic work activities relevant to assessing any limitations
caused by her mental impairments, and should also reevaluate the medical evidence
at step two with respect to Plaintiff's mental impairments.

1  | **V.**

2  | **CONCLUSION**

3  | The Court does not conclude that the ALJ should have found at step two that

4  Plaintiff's mental impairments are severe.  The Court does conclude, however, that

5  the ALJ did not give specific and legitimate reasons for giving Dr. Justice's opinion

6  less weight than Dr. Lee's, that this error was not necessarily harmless, and that

7  further development of the record is warranted to determine whether Plaintiff's

8  mental impairments caused only a minimal effect on her ability to work.  IT IS

9  THEREFORE ORDERED that this case be REVERSED and REMANDED for

10  further proceedings consistent with this order.

11

12

13  DATED:  <u>February 15, 2018</u>

14

15  KAREN E. SCOTT
   United States Magistrate Judge